UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ALEXANDER ALOMAR,

Petitioner,

v.

9:23-CV-0555 (GTS)

THE STATE OF NEW YORK,

Respondent.[1]

---

APPEARANCES: OF COUNSEL:

ALEXANDER ALOMAR
Petitioner, pro se
22-R-1423
Franklin Correctional Facility
P.O. Box 10
Malone, NY 12953

GLENN T. SUDDABY
United States District Judge

**DECISION and ORDER**

## I. INTRODUCTION

Petitioner Alexander Alomar seeks federal habeas relief pursuant to 28 U.S.C. § 2254. Dkt. No. 1, Petition ("Pet.").[2] On May 11, 2023, this action was administratively closed due to petitioner's failure to properly commence the case by either (1) paying the statutory filing fee

---

[1] The proper respondent in a habeas action brought pursuant to 28 U.S.C. § 2254 is the superintendent of the facility in which petitioner is incarcerated. *See* Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts & Advisory Notes. Petitioner has incorrectly named "The State of New York" as respondent. Instead, the Clerk is respectfully directed to update the docket sheet to reflect the proper respondent, Darwin LaClair, Superintendent of the Franklin Correctional Facility.

[2] For the sake of clarity, citations to petitioner's filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.

or (2) filing a properly certified application to proceed in forma pauperis ("IFP").[3] Dkt. No. 2, Administrative Closure Order. Petitioner was granted thirty (30) days leave to properly commence the instant action. *Id.*

Petitioner timely remitted the statutory filing fee, and the case was returned to the Court's active docket. Dkt. Entry dated 05/22/23 (memorializing receipt information for filing fee transaction); Dkt. No. 3, Text Order (reopening case).

For the reasons which follow, the instant petition is deemed premature and is dismissed without prejudice as unexhausted.

## II.  PETITION

Petitioner challenges a criminal conviction, from Albany County, of third degree criminal possession of a weapon and criminal possession of a firearm.[4] Pet. at 1.

Petitioner has both filed a direct appeal and multiple collateral challenges to his conviction pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 ("440 motion"). Pet. at 1-2. Petitioner asserts that, since October 6, 2022, he has had court-appointed counsel for his direct appeal; however, petitioner has not had contact with him. *Id.* at 2. Petitioner states that the deadline for his appellate brief was over three months ago and he is unsure whether there was a request for an extension, despite petitioner sending many letters and motions to the Appellate Division to try and secure new counsel. *Id.*

Additionally, petitioner has confirmation that his 440 motions were received by the

---

[3] The proper filing fee for a habeas corpus petition is $5.00. 28 U.S.C. § 1914(a).

[4] A search of the New York State Department of Corrections and Community Supervision ("DOCCS") Incarcerated Lookup database indicates that petitioner was received into state custody in June of 2022. *See* DOCCS Incarcerated Lookup Website, available at http://nysdoccslookup.doccs.ny.gov (DIN: 22R1423; "Alomar, Alexander") (last visited May 30, 2023). Accordingly, while petitioner fails to indicate the specific date of his criminal conviction or sentencing, it is safe to assume that petitioner was sentenced in or around June of 2022.

Albany County Court because he was provided with return dates of January 19, 2023, and February 16, 2023, respectively. Pet. at 1. Petitioner has yet to receive a response from the People or a decision from the state court on either motion. *Id.* Petitioner has also filed several motions for default in those cases given the failure of the People to file a response. *Id.* at 1-2. Petitioner concludes that there are "no more remedies left in the state court system" for him. *Id.* at 2.

Petitioner argues that he is entitled to federal habeas relief because (1) the search warrant violated his Fourth Amendment rights as it was not supported by probable cause, Pet. at 5, 13-14; (2) the search warrant was defective, *id.* at 5-7; (3) petitioner's criminal conviction is unlawful since there was never a true bill or indictment filed, *id.* at 7-8; (4) petitioner's counsel is constitutionally ineffective, *id.* at 5, 9; (5) his conviction is based on fraudulent evidence, *id.* at 9; and (6) the New York SAFE Act – the statute which petitioner allegedly violated, and for which he was convicted – is unconstitutional, *id.* at 11, 14. Petitioner asserts that "[t]he federal government intervening is the only way New York will acknowledge they're violating the law." *Id.* at 9. For further explanation of the aforementioned claims, reference is made to the petition.

## III. DISCUSSION

An application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A), (B)(i), (ii).

To satisfy the exhaustion requirement, a petitioner must do so both procedurally and

substantively. Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in a federal habeas corpus petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted). In other words, petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

"In New York, to invoke one complete round of the State's established appellate review process, a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). Accordingly, in order for petitioner to properly exhaust his presently pending claims challenging the constitutionality of the search warrant, indictment, statutory provision under which he was convicted, evidence supporting his conviction, and legal counsel during trial, petitioner must directly appeal his conviction. Petitioner indicates that his direct appeal is presently pending before the Appellate Division, and his appeal deadline expired only a few months ago. Pet. at 2.

Further, "[i]f a petitioner's claims are outside the record, then he may exhaust them by bringing a motion to vacate the judgment in the trial court under C.P.L. § 440.10, and then by seeking leave to appeal to the Appellate Division if the petitioner receives an adverse ruling." *Campos v. Smith*, No. 1:15-CV-6580, 2017 WL 1025850, at *2 (E.D.N.Y. Mar. 13, 2017)

(citing *inter alia* C.P.L. § 450.15(1)); *see also Tueros v. Greiner*, 343 F.3d 587, 590 (2d Cir. 2003) (explaining that a 440 motion was properly exhausted after it was denied by the county court and "[l]eave to appeal the denial of the []440 motion was denied."). Petitioner indicates that he has two additional collateral challenges, or 440 motions, pending – also apparently challenging the merits of his underlying criminal conviction -- with return dates set by the Appellate Division that expired only a few months ago. Pet. at 1.

There is no basis on the record before this Court to conclude that there is an absence of available State corrective process (e.g., where there is no further state proceeding for a petitioner to pursue) or circumstances exist that render that state court process ineffective to protect petitioner's rights (e.g. where further pursuit would be futile). 28 U.S.C. § 2254(b)(1)(B)(i), (ii); Lurie v. Wittner, 228 F.3d 113, 124 (2d Cir. 2000). Petitioner has state court remedies available to him, and he is in the middle of exhausting them. Therefore, it is not futile to require him to complete said exhaustion of his state court remedies before pursuing a federal habeas petition.

Further, petitioner's assertion that the statutory exhaustion prerequisite does not apply to him because there are no more available remedies in state court is unpersuasive. There are limited instances where the exhaustion requirement can be waived. 28 U.S.C. § 2254(b)(1)(A), (B)(i), (ii). However, "[i]t is well established that a petitioner may not bypass state courts merely because they may be unreceptive to the claim." *Jones v. Keane*, 329 F.3d 290, 295 (2d Cir. 2003) (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)); *see also Engle v. Issac*, 456 U.S. 107, 130 (1982) ("If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim. Even a state court that has

previously rejected a constitutional argument may decide, upon reflection, that the contention is valid. Allowing criminal defendants to deprive the state courts of this opportunity would contradict the principles [of comity.]"); *see also Burke v. Pallito*, No. 2:12-CV-0197, 2013 WL 496150, at *4 (D. Vt. Jan. 18, 2013) ("conclusory allegations of systematic corruption . . . do not warrant excusing § 2254's exhaustion requirement.") (citing cases) (internal quotation marks omitted). Petitioner's conclusory arguments that the state courts are unresponsive and, presumably, intentionally ignoring his claims are unavailing.

Moreover, any arguments petitioner makes about judicial delay in determining his state court challenges rendering exhaustion unavailable or otherwise absolving him from completing the statutory prerequisite are also unconvincing.[5] Petitioner's direct appeal and 440 motions do not represent cases that have "languished for three or four years," these are cases that are clearly still active. *See Pollack v. Patterson*, No. 1:10-CV-6297, 2011 WL 6747409, at *2 (S.D.N.Y. Dec. 23, 2011) (comparing situations where exhaustion was deemed unavailable because the direct appeal of the criminal convictions were delayed three to six years with Pollack's action, where hearings remained ongoing, and concluding the exhaustion prerequisite should not be waived). Petitioner has cited recent deadlines for motion practice for all of the aforementioned actions. It appears that briefing deadlines for both the direct appeal and 440 motions expired in the recent past. Accordingly, these cases were just presented to the appropriate court for review, and a court's decision-making process is not instantaneous. The fact that, by petitioner's own admission, he has only been waiting a matter of three to four months since the briefing schedule concluded fails to support

[5] It does not appear that petitioner is also claiming that his due process rights have been violated by a delay in deciding his direct appeal; however, to the extent petitioner intends on pursuing any such claim he should specifically include it in the petition of any subsequently-filed federal habeas action.

his claims of an inordinate delay.  *See Saunders v. Comm'r, Dep't of Corr.*, No. 3:10-CV-0410, 2011 WL 572313, at *5 (D. Conn. Feb. 15, 2011) (concluding that "a delay of nine or ten months . . . is not a period so lengthy as to render state collateral proceedings ineffective for the purposes of the exhaustion requirement.") (internal quotation marks omitted) (citing cases).

Additionally, to the extent petitioner is convinced that he will not prevail on his collateral challenges, such beliefs do not actually mean that it is certain that petitioner will not receive the relief he seeks from his state court challenges.  *See Hernandez-Hernandez v. Feely*, 535 F. Supp. 3d 142, 151 (W.D.N.Y. 2021) (holding that exhaustion of administrative remedies is not futile where petitioner is eligible, on appeal, for release which is the relief which he seeks) (citing cases).  Accordingly, there is nothing before the Court that leads it to conclude that petitioner's state court remedies were futile or unavailable or that the state court was acting in a dilatory manner.

In sum, petitioner has state court remedies available to him and there is no reason to believe he does not know how to pursue them.  Therefore, it is not futile to require him to complete exhaustion of his state court remedies before pursuing a federal habeas petition.  Accordingly, if petitioner wishes to move forward with all of the claims presently included in his petition, he may not do so until he has properly exhausted them.  28 U.S.C. § 2254(b)(1)(A), (B)(i), (ii); O'Sullivan, 526 U.S. at 845.[6]

---

[6] Petitioner's papers do not reflect an awareness that his petition was filed prematurely or an intention for the instant action to act as a sort of protective filing.  Protective filings are often accompanied with a motion to stay, to allow petitioners to properly exhaust all of their claims before the state courts, so that their federal habeas petition can litigate all potential constitutional violations.  To the extent this was petitioner's goal, he will be unsuccessful.

When a district court is presented with a "mixed petition" containing both exhausted and unexhausted claims, it may dismiss the petition without prejudice or retain jurisdiction over the petition and stay further proceedings pending exhaustion of state remedies.  *Rhines v. Weber*, 544 U.S. 269, 275-76 (2005).  Conversely, when "the petition is not mixed[] and contains only unexhausted claims, federal courts that have considered the issue are in

Additionally, it does not appear that a subsequent habeas petition, if necessary and if filed promptly after petitioner's claims are exhausted in state court, will be jeopardized by the statute of limitations. The AEDPA's one-year limitations period generally begins to run from the date on which the state criminal conviction became final by the conclusion of direct review or by the expiration of the time to seek direct review. 28 U.S.C. § 2244(d)(1)(A).[7] Properly filed state court applications for relief operate to toll the limitations period if those applications are filed before the one-year limitations period expires. 28 U.S.C. § 2244(d)(2); *Saunders v. Senkowski*, 587 F.3d 543, 548 (2d Cir. 2009). The tolling provision excludes from the limitations period only the time that the state relief application remains undecided, including the time during which an appeal from the denial of the application was taken. *Id.*

Petitioner's direct appeal is presently pending; therefore, petitioner's conviction has not been finalized. Dismissal of the instant petition will have no impact on the statute of limitations because the limitations period cannot begin until there is a final judgment. 28

---

agreement that the stay-and-abeyance procedure described in *Rhines* is not available." *Kalu v. New York*, No. 1:08-CV-4984, 2009 WL 7063100, at *5 (E.D.N.Y. Sept. 15, 2009), *report and recommendation adopted*, *Ndukwe v. New York*, 2010 WL 4386680 (E.D.N.Y. Oct. 28, 2010); *see also Pantoja v. New York State Div. & Bd. of Parole*, No. 1:11-CV-9709, 2013 WL 866869, at *6 (S.D.N.Y.,2013), *report and recommendation adopted by,* 2013 WL 865905 (SDNY Mar. 8, 2013) (holding "that there is no basis to retain jurisdiction over a petition that contains only unexhausted claims . . . Moreover, because this case does not involve a 'mixed' petition . . . this Court may not stay the proceedings[.]") (quoting *Shomo v. Maher*, No. 1:04-CV-4194, 2005 WL 743156, at *7 n. 12 (S.D.N.Y. Mar. 31, 2005)) (internal quotation marks omitted); *Gonzalez v. Lee*, No. 2:10-CV-3366, 2011 WL 3471530, at *1 (E.D.N.Y. Aug. 3, 2011) ("A federal court will not stay a petition comprised solely of unexhausted claims, and all such petitions must be dismissed without prejudice.").

Here, because none of the claims in the petition have properly been exhausted before the state court system, through either a direct appeal or collateral attack, the claims are all unexhausted, as is the petition. Because this petition is not mixed, a stay is inappropriate.

[7] Other dates from which the limitations period may start running are the date on which an unconstitutional, state-created impediment to filing a habeas petition is removed, the date on which the constitutional right on which the petitioner bases his habeas application was initially recognized by the Supreme Court, if the right was newly recognized and made retroactively applicable, or the date on which the factual predicate for the claim or claims presented could have been discovered through the exercise of due diligence (newly discovered evidence). 28 U.S.C. § 2244(d)(1)(B)-(D). None of the bases for a later date upon which the statute of limitations could have begun to run appear to apply in this case.

U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 149-50 & n.9 (2012).  At the conclusion of the state court proceedings, petitioner will have a year to re-file his habeas petition.  Thus, petitioner should promptly re-file his petition, and include any and all claims he has therein, when he has completed exhausting his claims in state court, as he has adequate time in which to do so.

Based on the foregoing, the petition is premature and is dismissed without prejudice to re-filing one complete petition once petitioner has pursued and exhausted all the claims he wants to raise in the state courts.  *See Diguglielmo v. Senkowski*, 42 F. App'x. 492, 496 (2d Cir. 2002) (summary order) ("[B]ecause the New York Court of Appeals has not yet had an opportunity to address DiGuglielmo's federal claims, comity requires that we allow that court an opportunity to do so.  Accordingly, we dismiss DiGuglielmo's petition without prejudice.  This will allow DiGuglielmo to pursue any procedural options available to him in New York state court, and then take whatever steps may be appropriate to return to federal court if necessary.") (footnote omitted).[8]

## IV. CONCLUSION

**WHEREFORE**, it is

**ORDERED** that the Clerk is respectfully requested to update the caption to reflect the proper respondent; and it is further

**ORDERED** that the petition, Dkt. No. 1, is **DISMISSED WITHOUT PREJUDICE** as premature for failure to exhaust available state court remedies; and it is further

---

[8]  The Court notes that if petitioner's claims are unsuccessful in state court, a subsequent habeas petition should not run afoul of the "second or successive petition" limitations because this petition is being dismissed for failure to exhaust and not on the merits.  *Burton v. Stewart*, 549 U.S. 147, 155 (2007) (per curiam) (citing *Slack v. McDaniel*, 529 U.S. 473, 478 (2000)).

**ORDERED** that no certificate of appealability ("COA") shall issue in this case because petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2).[9] Any further request for a COA must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

**ORDERED** that the Clerk is directed to serve a copy of this Order on petitioner in accordance with the Local Rules.

Dated: June 14, 2023
Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

[9] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).